IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOY OXNER,<br><br>                *Plaintiff*,<br><br>    v.<br><br><br>CLIVEDEN NURSING &<br>REHABILITATION CENTER PA, L.P., *et al.*,<br><br>                *Defendants*. | CIVIL ACTION<br>NO. 14-07204 |

**MEMORANDUM**

**PAPPERT, J.**                                                                                                  September 17, 2015

      Plaintiff Joy Oxner ("Oxner") sued her former employers Cliveden Nursing and Rehabilitation Center PA, L.P. ("Cliveden"), Mid-Atlantic Health Care, LLC ("Mid-Atlantic") and PA Nursing Home GP, LLC ("PANH"), as well as her former supervisor Tricia Fitzgerald ("Fitzgerald") (collectively "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and state statutes, namely the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, the Pennsylvania Minimum Wage Act, 43 Pa. C.S.A. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*.  Defendants have moved to dismiss Oxner's WPCL claim ("Count VII") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 23.)  For the following reasons, the Court will grant the motion in part and deny it in part.

1

I.

Oxner is a Muslim African American who was hired by Cliveden in 2010 as a staffing coordinator for their "Greene Street" nursing home facility. (Am. Compl. ¶¶ 8, 24, 33, 42.) Oxner alleges that Cliveden was owned and operated by Mid-Atlantic and PANH, "who acted as joint employers of [Oxner] along with Cliveden." (*Id*. ¶ 25.) Director of Nursing Veronica Lyons ("Lyons") was Oxner's immediate supervisor and, in April 2013, Fitzgerald became Lyons' supervisor as Administrator of the Greene Street facility. (*Id*. ¶¶ 19-20.)

Oxner alleges that from April 2013 until her termination in March 2014 she was repeatedly subjected to racial and religious discrimination by Fitzgerald. (*Id*. ¶ 31.) Oxner maintains she was eventually terminated for several unlawful discriminatory and retaliatory reasons, including retaliation for her complaints to Human Resources about Fitzgerald's discrimination and retaliation for seeking to take leave pursuant to the FMLA. (*Id*. ¶ 80.)

Oxner also alleges that she was improperly compensated during her employment with Cliveden. Oxner contends that "for almost her entire tenure, though she was an hourly employee entitled to overtime pay for her hours worked over forty, [Defendants] insisted that Ms. Oxner be physically present and working at the Greene Street facility for a full forty hours per week and that she perform an additional forty to fifty hours per week 'off the clock,' at home, for which she did not receive any pay at all, let alone overtime pay." (*Id*. ¶ 29.) Specifically, Oxner claims that Lyons instructed her to work this extra time and that Lyons later "explicitly told [Regional Director Jennifer] Kelly and others at Cliveden that Ms. Oxner was acting at [Lyons'] direction." (*Id*. ¶ 80.) Although "Defendants Cliveden, Mid-Atlantic and PANH instructed and expected" Oxner to work the extra hours, Oxner was never paid for these hours despite her repeated complaints. (*Id*. at ¶¶ 43, 114.)

In retaliation for Oxner's complaints to Human Resources about Fitzgerald, Oxner alleges that in October 2013 Fitzgerald issued her an "unwarranted write-up for a time-clock violation, resulting in [Oxner's] suspension for approximately eight days." (*Id.* ¶ 43.) Included in this write-up were instructions "directing [Oxner] not to work remotely any longer and not to work overtime for calls outside the facility, despite her supervisors' previous explicit direction to the contrary." (*Id.* ¶ 46.) After receiving this write-up in October 2013, Oxner stopped working overtime. (*Id.* ¶ 47.)

Oxner filed her amended complaint on June 2, 2015. (ECF No. 21.) On June 23, 2015, Defendants moved to dismiss Count VII of the amended complaint, arguing that Oxner failed to allege that her WPCL claim arose from an employment contract as required by Pennsylvania law. (ECF No. 23.) Oxner filed a brief in opposition, responding that she adequately alleged an at-will employment relationship in the amended complaint, which amounts to an implied employment contract for the purposes of the WPCL. (ECF No. 25.) In the alternative, Oxner requests leave to amend Count VII should the Court find that her WPCL claim was not adequately alleged. (Opp'n to Mot. Dismiss 8.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *i.e.*, sufficient facts to permit "the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (quotation omitted).

The court must construe the complaint in the light most favorable to the plaintiff. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010) (quoting *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009)). However, while all allegations contained in the complaint must be accepted as true, the court need not give credence to mere "legal conclusions" couched as facts. *Iqbal,* 556 U.S. at 678. To decide a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and where appropriate and necessary "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.

The WPCL does not create a right to compensation; it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (citing *Antol v. Esposto,* 100 F.3d 1111, 1117 (3d Cir. 1996)). The contract between the parties governs in determining whether specific wages are earned. *Id*. Where an employee does not work under a written employment contract or collective bargaining agreement, the employee will have to establish the formation of an implied oral contract to recover under the WPCL. *Id*. at 309-10; *see also Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (citing *De Asencio*, 342 F.3d at 309), *aff'd*, 106 A.3d 656 (Pa. 2014).

Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances. *See Halstead v. Motorcycle Safety Found., Inc*., 71 F. Supp. 2d 455, 459 (E.D. Pa. 1999). An offer and acceptance need not be identifiable and the moment of formation need not be precisely pinpointed. *See Ingrassia Constr. Co., Inc. v. Walsh,* 486 A.2d 478, 483 (Pa. Super. Ct. 1984). In general, there is "an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary." *Martin v. Little, Brown & Co.,* 450 A.2d 984, 987 (Pa. Super. Ct. 1981). As the Pennsylvania Superior Court explained, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *Id.* (citing *Home Prot. Bldg. & Loan Ass'n,* 17 A.2d 755, 756-57 (Pa. Super. Ct. 1941); 17A Am. Jur. 2d Contracts § 5). A promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services. *Id.*

Accepting all factual allegations in the amended complaint as true, the Court finds that Oxner has sufficiently stated a WPCL claim for the hours she worked from home. Defendants do not dispute that Oxner was their employee and earned a set hourly wage. If Oxner's supervisors specifically instructed her to work additional hours, as alleged in the amended complaint (*see* Am. Compl. ¶¶ 29, 46, 80, 114), then she performed a "useful service" for Defendants, "with their knowledge," of a "character that is usually charged for" and Defendants

expressed no dissent and availed themselves of the service.[1] *Martin,* 450 A.2d at 987 (citations omitted). Oxner would therefore be justified in entertaining a reasonable expectation of being compensated by Defendants for her additional work at her set hourly wage. *See Gordon v. Maxim Healthcare Servs., Inc.*, No. 13-cv-7175, 2014 WL 3438007, at *4 (E.D. Pa. July 15, 2014) ("Although Gordon did not work for Maxim according to the terms of any written agreement, she has averred that she provided services as a home healthcare aide in exchange for wages to be paid according to a week-long pay period . . . . Gordon did not state specifically in her amended complaint that a contract existed between her and Maxim by virtue of the allegations made, but a party must plead facts, not legal conclusions, to meet our pleading standards. There are sufficient facts set forth in the amended complaint to make plausible the existence of an implied oral contract between Gordon and Maxim."); *Euceda v. Millwood, Inc.*, No. 3:12-cv-0895, 2013 WL 4520468, at *5 (M.D. Pa. Aug. 26, 2013) ("[T]here is sufficient evidence of a contract to pay wages to support a WPCL claim at this stage. The plaintiff has alleged, and the defendant does not deny, that he was employed as a pallet repairer by the defendant. The plaintiff also asserts that he was paid . . . $.39 per pallet repaired [and] that the defendant availed itself of the plaintiff's work during two separate periods of employment."); *cf. Bertolino v. Controls Link, Inc.*, No. 14-cv-720, 2014 WL 5148159, at *4 (W.D. Pa. Oct. 14, 2014) ("As an employee performing work for hire, Plaintiff's [WPCL] claim sounds in contract (a fact unaltered by the at-will nature of his employment).").

Defendants argue that no implied contract existed with Oxner, citing *Barvinchak v. Indiana Reg'l Med. Ctr.*, No. 3:2006-cv-69, 2007 WL 2903911, at *2 (W.D. Pa. Sept. 28, 2007)

---

[1] Oxner claims that the Defendants eventually expressed dissent to her working additional hours in October 2013, at which point she stopped working from home. (Am. Compl. ¶¶ 46-47.) Thus, in accordance with the alleged facts and Pennsylvania case law, Oxner can only recover additional wages under the WPCL through October 2013.

for support.  *Barvinchak* is distinguishable from this case.  In *Barvinchak*, the plaintiff sought payment for hours that defendant "never instructed" her to record and denied her permission to report.  *Id*. at *2, 8.  The plaintiff was, however, "paid overtime compensation for hours which were worked and recorded with the permission of management."  *Id*. at *8.  Given this history, the court found that "the employment relationship between the parties would not create a reasonable expectation by [Barvinchak] that she would be compensated for any unreported hours."  *Id*. at *10.  Conversely here, Oxner alleges that Lyons and other superiors expressly instructed and expected her to work the additional hours.  (Am. Compl. ¶¶ 29, 46, 80, 114.)  Assuming these facts to be true, it is plausible that Oxner had a reasonable expectation that she would be paid for her extra time.

     Construing the amended complaint in the light most favorable to Oxner does not, however, support her claim that she is entitled to overtime pay for the additional work.  Oxner alleges that Defendants "insisted," "direct[ed]," "instructed and expected [Oxner] to work this extra time" (Am. Compl. ¶¶ 29, 46, 80, 114), but nowhere in the amended complaint does Oxner contend that Defendants promised to or implied that they would compensate her at a higher rate of pay for this extra work.  Rather, Oxner merely claims that she was "entitled to overtime pay for her hours worked over forty."  (*Id*. ¶ 29.)  This claim is a legal conclusion couched as a fact and the Court need not give it credence.  *Iqbal*, 556 U.S. at 678.  Oxner cannot maintain a plausible WPCL claim for overtime pay without alleging any facts that demonstrate that Defendants intended to obligate themselves to pay Oxner more than her agreed-upon regular wage when she worked from home.  *See Mackereth v. Kooma, Inc.*, No. 14-cv-04824, 2015 WL 2337273, at *10 (E.D. Pa. May 14, 2015) (dismissing plaintiff's WPCL claim where plaintiff entirely failed to allege "the existence of a contractual right, either express or implied, to recover

7

the wages they seek"); *McGough v. Broadwing Commc'ns, Inc.*, 177 F. Supp. 2d 289, 299 (D.N.J. 2001) (holding plaintiffs' "vague allegations" insufficient to state a claim for payment of stock options under the WPCL because, *inter alia*, plaintiffs did "not even provide the terms under which they were allegedly entitled to receive these stock options" and plaintiffs did "not allege facts supporting a claim that their performance entitled them to an award of stock options."); *compare Braun*, 24 A.3d at 956-58 (holding that hourly employees could recover monetary payments for rest breaks under the WPCL because employer had agreed to compensate employees "for break time at the applicable rate of pay" in employee handbook).  Defendants' motion is accordingly granted to the extent that Oxner is seeking overtime pay in Count VII.[2]

An appropriate order follows.


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2]  Oxner's passing request for leave to amend in her opposition brief is improper. (*See* Opp'n. Mot. Dismiss 8.)  Plaintiffs must attach a copy of the proposed amended complaint when requesting leave to amend.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (setting forth "rule that, to request leave to amend a complaint, the plaintiff must submit a draft amended complaint").  Without a copy of the proposed amended complaint, the Court has no means to assess the merits of Oxner's request and has "nothing upon which to exercise its discretion."  *Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000).  Because "a district court need not worry about amendment when the plaintiff does not properly request it," *Fletcher-Harlee Corp.*, 482 F.3d at 252, the Court will not consider Oxner's passing request any further.